UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:13-CV-286-EBA

KEITH RHODES, PLAINTIFF,

V. **MEMORANDUM OPINION AND ORDER**

CAROLYN W. COLVIN,
Commissioner of Social Security Administration, DEFENDANT.

## I. INTRODUCTION

Plaintiff, Keith Rhodes, brings this action under 42 U.S.C. § 405(g) to challenge the Defendant Commissioner's final decision denying his application for disability insurance benefits and Supplemental Security Income (SSI). [Record No. 13]. Upon consent of the parties, this matter has been referred to the undersigned to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. [Record No. 18]. Now ripe for decision on the parties' cross-motions for summary judgment, and for the reasons set forth herein, Plaintiff's Motion for Summary Judgment [Record No. 13] shall be denied, the Defendant's Motion for Summary Judgment [Record No. 14] shall be granted, and Judgment shall be entered affirming the final decision of the Commissioner.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On January 20, 2011, the Plaintiff filed applications for disability insurance benefits and supplemental security income. [Tr. 171-174]. In these applications, the Plaintiff alleged disability

since March 20, 2008. Id. In his Disability Report, Form SSA-3368, the Plaintiff claimed his work ability was limited due to his back, shoulder, carpel tunnel, high blood pressure, torn rotator cuff, neck problems, knees, feet, hernia repair surgery, stomach problems and bladder surgery. [Tr. 196-201]. His claim was denied initially [Tr. 50-54], and on reconsideration [Tr. 1-6]. After denial of his claim, Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). [Tr. 125-131].

On March 26, 2012 a hearing was held before ALJ Michelle Thompson. [Tr. 10-31]. The Plaintiff testified at the hearing, and was represented by Rodney Davis. [Tr. 10-31]. ALJ Thompson denied Plaintiff's claim for benefits in a written decision dated May 9, 2012. [Tr. 53-62]. In evaluating Plaintiff's claim, the ALJ applied the five-step sequential evaluation process to determine that he was not disabled. see 20 C.F.R. §§ 404.1520; 416.920. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of his application for benefits. [Tr. 55]. Next, the ALJ found that the Plaintiff has the following severe impairments: degenerative disc disease; left shoulder osteoarthritis; carpel tunnel syndrome; hypertension; and obesity. [Tr. 55]. At step three, the ALJ found that Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 56].

Before proceeding to the fourth step, the ALJ found that Plaintiff's impairments left him with the residual functional capacity ("RFC") to perform a limited range of light work as defined by the Regulations. [Tr. 55-57]. Specifically, with respect to his physical limitations, the ALJ described Plaintiff's residual functional capacity as follows:

> Claimant has the residual functional ability to lift up to 10 pounds frequently and up to 20 pounds occasionally. He can sit, stand and/or walk for six hours in an eight

>hour day. He can occasionally climb, stoop, kneel and crouch. He is limited to occasional overhead lifting.

[Tr. 53].

The fourth step of the analysis is to determine whether the Plaintiff's residual functional capacity would allow him to perform the requirements of his past relevant work. The ALJ determined that the Plaintiff was unable to perform any past relevant work. see 20 C.F.R. §§ 404.1563, 416.963. [Tr. 60]. At the fifth and final step, relying on the testimony of the Vocational Expert ("VE") and taking into consideration Plaintiff's age, educational background, past relevant work experience, and residual functional capacity, the ALJ must determine whether the Plaintiff is capable of making a successful adjustment to work existing in significant numbers in the national economy. see 20 C.F.R. §§ 404.159(a); 416.969(a). Based on the testimony of the Vocational Expert, the ALJ held that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Tr. 61]. Based on these findings, the ALJ determined that the Plaintiff was not under a "disability" as defined by the Social Security Act, see 20 C.F.R. §§ 404.1520(g) and 416.920(g). [Tr. 62].

Following the adverse decision of the ALJ, Plaintiff properly exhausted his administrative remedies. [Tr. 4-6]. On August 30, 2013, Plaintiff initiated the present action by filing his Complaint in the United States District Court for the Eastern District of Kentucky. [Record No. 1]. In his Motion for Summary Judgment, the Plaintiff claims that the ALJ failed to properly consider the independent functional capacity report from Blue Grass Physical Therapy. [Record No. 13]. The Commissioner responds that the ALJ's decision should be affirmed, as it was reached applying the proper standards and was supported by substantial evidence. [Record No. 14]. Following briefing,

this matter was referred to the undersigned, upon the consent of the parties for all proceedings. [Record No. 18].

### III . STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." Longworth v. Comm'r Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

**A. The ALJ assessed proper weight to the independent functional capacity report from Blue Grass Physical Therapy.**

In his instant Motion for Summary Judgment, Rhodes argues that the ALJ erred by not giving the proper weight to the independent functional capacity report from Blue Grass Physical Therapy. [Record No. 13]. According to the Plaintiff, the report prepared by Angie Henning, was based on an extensive review of the record and included her findings after a three hour examination of the Plaintiff. Id. at 5. The report limits the Plaintiff to less than sedentary work. Id. Though Plaintiff concedes that the report is not an acceptable medical source, he contends that the ALJ erred when holding the report did not have evidentiary value. Id. at 5-7. Plaintiff further contends that this failure is contrary to Social Security Rulings, specifically 20 C.F.R. § 404.1513, which allows adjudicators to consider other non-medical sources to determine functional capacity once an impairment has been established. Id. at 6-7. In opposition, the Commissioner correctly maintains that the ALJ complied with rule 20 C.F.R. § 404.1513 and that the decision to give less weight to

Blue Grass Physical Therapy's independent functional capacity report was supported by substantial evidence. [Record No. 14].

Throughout the five-step disability evaluation process, the ALJ is charged with the duty to weigh evidence, resolve material conflicts in testimony, and determine the case accordingly. see Richardson v. Perales, 402 U.S. 389, 399 (1971). "The Commissioner has elected to impose certain standards on the treatment of medical source evidence." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-381 (6th Cir. 2013)(quoting Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)). Set forth in administrative regulations, these standards describe "(1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b." Gayheart, 710 F.3d at 375.

As a physical therapist, Henning's report qualifies as an "other source" as defined by the regulations, but is not considered an "acceptable medical source." see 20 C.F.R. §§ 404.1502, 404.1513(a), (d), 416.902, 416.913(a), (d); SSR 06-3p. Social Security Ruling 06-3p addresses how an adjudicator should evaluate opinions from other sources. This Ruling suggests that information from these "other sources" may provide insight into the severity of the impairments and how they affect the individual's ability to function, however only acceptable medical sources can provide medical opinions. SSR 06-3p; see 20 C.F.R. §§ 404.153(a), (d), 404.1527(a)(2), 416.913(a), (d), 416.927(a)(2).

Social Security Ruling 06-3p further instructs that adjudicators should apply the same factors used to evaluate medical opinions when assessing opinion evidence from "other sources." These factors include: 1) how long the source has known the claimant; 2) frequency of treatment; 3)

consistency of the opinion with other evidence; 4) how well the source explains the opinions; 5) sources's specialty; and 6) other relevant sources. Id.; see 20 C.F.R. §§ 404.1527(c), 416.927(c). It is important to note that an ALJ is entitled to disregard an opinion from an "other source" if that opinion is inconsistent with the objective medical evidence. Hash v. Comm'r of Soc. Sec., 309 F. App'x 981, 987 (6th Cir. 2009).

In this case, the ALJ's decision to give limited consideration to the independent functional capacity report prepared by Henning was supported by substantial evidence in the record. The ALJ supported his finding by reviewing the Social Security Ruling 06-3p factors. The ALJ found that Henning's speciality was physical therapy and therefore not considered an "acceptable medical source." [Tr. 59]. Even with this finding, the ALJ further reviewed and considered Henning's report and noted that the Plaintiff was only seen by Henning once and that her findings were inconsistent with the entire medical record. Id. The ALJ found that:

> [Henning] assessed the claimant at a less than sedentary range of work... The factors underlying performance [Henning] listed included decreased muscle strength in multiple areas; decreased range of motion in multiple joints, specifically both shoulders; radiating pain into the lower extremities and interscapular area; gait deviations; and dropping nuts and bolts (8F at 6). The examination she performed showed some minimal to moderate limitations in cervical range of motion; moderate limitation in lumbar flexion and rotation, with major/moderate limitation in extension; and major limitations in both shoulders' range of motion. However, both [Plaintiff's] upper and lower extremity strengths were no worse than 4/5 in any category (8F at 3). The "gait deviations" [Henning] mentioned, as well as [the Plaintiff's] ability to pick up small objects, are both inconsistent with the findings of the consultative examiner ... and are not substantiated by objective medical findings contained in the record.

[Tr. 59].

The ALJ gave appropriate consideration to Henning's report, but also recognized that she was unqualified to make a medical determination. Instead of attributing greater weight to this report, the ALJ chose to accord greater weight to the State agency consultative examiner because his

findings were consistent with the record as a whole. Id. Specifically, the medical record reflected that very little treatment was received during the relevant times of the Plaintiff's claims, and no treatment was received for his alleged impairments after November 12, 2008. Id. After November 2008 and during three of his visits with his general practitioner, the Plaintiff reported neck pain but during two of those visits, the Plaintiff associated his neck pain with headaches. Id. After November 12, 2008, the ALJ also found that the Plaintiff never sought treatment from a specialist. In August of 2011, Plaintiff's doctor reported a normal range of neck motion. Id. Furthermore, any restrictions that were placed on the Plaintiff's work seemed to continually change within a very limited period of time without any explanation or seeming changes in his condition. Id. at 59-60.

In addition, the Plaintiff also testified to engaging in certain activities of daily life that were not consistent with his alleged disabilities. Id. at 60. Plaintiff testified that he could used a riding lawn mower, which indicated to the ALJ that the Plaintiff's ability to sit was not as limited as he alleged. Id. Plaintiff also reported that he did not "fish or hunt much" suggesting that he may still do these activities on occasion. Id. The ALJ found that, "these factors support no more limitations than what are given in the above residual functional capacity." Id.

Thus, when viewing the entire record, this Court finds that substantial evidence supported the ALJ's decision to assign lesser weight to the independent functional assessment provided by Blue Grass Physical Therapy. Put simply, there was sufficient evidence upon which a reasonable person could accept as adequate the decision to give limited weight to the independent functional capacity report from Blue Grass Physical Therapy. As the Plaintiff has failed in his burden of presenting colorful claims of error, no relief may be sought under this claim.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment [Record No. 13] shall be DENIED, the Defendant Commissioner's Motion for Summary Judgment [Record No. 14] shall be GRANTED, and Judgment shall be entered affirming the final decision of the Commissioner.

Signed February 25, 2015.

Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge